UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN GEISSE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BAYER HEALTHCARE PHARMACEUTICALS INC., et al., <br><br> Defendants. | Case No. 17-cv-07026-JD <br><br> **ORDER RE MOTIONS TO REMAND** <br><br> Re: Dkt. Nos. 38 (17-7026); 24 (18-811); 19 (18-3077); 15 (18-4568); 23 (18-6015) |
| PATRICIA YOUNG, <br><br> Plaintiff, <br><br> v. <br><br> BAYER HEALTHCARE PHARMACEUTICALS INC., et al., <br><br> Defendants. | Case No. 18-cv-00811-JD |
| BETH WINKLER, <br><br> Plaintiff, <br><br> v. <br><br> BAYER HEALTHCARE PHARMACEUTICALS INC., et al., <br><br> Defendants. | Case No.18-cv-03077-JD |
| JANE DOE, <br><br> Plaintiff, <br><br> v. <br><br> BAYER HEALTHCARE PHARMACEUTICALS INC., et al., <br><br> Defendants. | Case No. 18-cv-04568-JD |

| | |
|---|---|
| LINDA MANSOLILLO,<br><br>       Plaintiff,<br><br>    v.<br><br>BAYER HEALTHCARE<br>PHARMACEUTICALS INC., et al.,<br><br>       Defendants. | Case No. 18-cv-06015-JD |

Plaintiffs originally filed these related product liability cases in California Superior Court after exposure to Magnevist, a medical contrast agent used to enhance MRI images. Defendant Bayer Healthcare Pharmaceuticals Inc. ("Bayer") manufactures Magnevist and removed the cases to this Court on alleged diversity and "federal officer" grounds. Dkt. No. 1. Plaintiffs seek a remand to state court. Dkt. Nos. 38 (17-7026); 24 (18-811); 19 (18-3077); 15 (18-4568); 23 (18-6015). The parties stipulated to submit the remand question for all of the related cases on the arguments in *Doe v. Bayer HealthCare Pharmaceuticals Inc*., Case No. 18-cv-4568-JD. *See* Dkt. Nos. 59-61 in 17-7026.[1] The Court concludes that these cases were removed improvidently and without jurisdiction, and remands them to the California Superior Court pursuant to 28 U.S.C. Section 1447(c).

## BACKGROUND

As alleged in the complaints, Magnevist is formulated with gadolinium, a toxic heavy metal that is not normally present in the human body. Magnevist is marketed as a contrast agent that is injected intravenously to enhance and improve the quality of MRI images. Plaintiffs allege that they developed gadolinium deposition disease ("GDD") from being injected with Magnevist. GDD is said to cause tremors and mental confusion, damage to kidneys, muscles and bone, and other serious health problems. It typically occurs in individuals who had normal kidney functions before injection, in contrast with another gadolinium-linked disease called Nephrogenic Systemic Fibrosis, which occurs mainly in patients who had pre-existing renal failure. The complaints

---

[1] All record citations are to *Doe*, Case No. 18-4568, unless stated otherwise. Plaintiff Doe filed under a pseudonym, although a request to proceed pseudonymously has not been filed or approved by the Court.

2

allege claims for strict product liability and negligence for defendants' failure to warn patients and healthcare professionals about the risks of GDD and other complications caused by Magnevist. *See generally* Dkt. No. 1-1.

Bayer and its affiliates manufactured, marketed and sold Magnevist throughout the United States and in California. Defendant McKesson Corporation ("McKesson") and its affiliates distributed Magnevist in California. Plaintiffs are California residents, and allege that they were injected with Magnevist made by Bayer and distributed by McKesson to them in California.

Plaintiffs sued in California Superior Court under California products liability law. They alleged, with no opposition here, that McKesson and another defendant distributor, Merry X-Ray Chemical Corp., are incorporated or have a principal place of business in California. Bayer is an out-of-state entity, and removed the cases to federal court on diversity grounds. Bayer contends that complete diversity is present because McKesson was fraudulently joined and should be disregarded for removal purposes.[2] Bayer also says that removal was proper under 28 U.S.C. Section 1442(a), which permits removal of cases involving the United States and its agencies and officers, and those acting under the control of federal officials.

## DISCUSSION

As in all federal cases, the foundational principle here is that the jurisdiction of the federal courts is limited to what is authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, removal is appropriate only when a case presents a federal question or involves diversity of citizenship and meets the statutory amount in controversy. 28 U.S.C. §§ 1331, 1332. There is a strong presumption against removal, and the removal statute is strictly construed against finding federal jurisdiction. *Gaus v. Miles*, 980 F.2d. 564, 566 (9th Cir. 1992). Any doubts about the propriety of removal should be resolved in favor of a remand to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). Principles of federalism, comity, and respect for the state courts also counsel strongly

---

[2] This order uses McKesson as a proxy for Merry X-Ray in light of the parties' stipulation that the briefing in *Doe*, which refers only to McKesson, will resolve all the remand disputes. The two distributors are similarly situated factually.

in favor of scrupulously confining removal jurisdiction to the precise limits that Congress has defined. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). The defendant always bears the burden of demonstrating that removal was proper. *Gaus*, 980 F.2d at 566.

As a starting position, Bayer contends that removal was appropriate on the basis of diversity under Section 1332. Diversity removal requires complete diversity, which means that each plaintiff must have a different citizenship from each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Since the complaints show on their face that plaintiffs and McKesson are non-diverse, Bayer can remove under Section 1332 only if it establishes that McKesson was fraudulently joined. *Grancare, LLC, v. Thrower by and Through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). If so, the presence of the non-diverse party can be disregarded and not counted against diversity. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

"There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Grancare*, 889 F.3d at 548 (quoting *Hunter v. Philip Morris, USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)). Consequently, short of proving that the plaintiff committed actual fraud in pleading jurisdictional facts, a defendant urging fraudulent joinder must show that the non-diverse party who was "'joined in the action cannot be liable on any theory.'" *Id*. (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)). Our circuit has emphasized that this inquiry is not the same as the Rule 12(b)(6) review for failure to state a plausible claim. *Id*. at 549. It has a lower bar and requires only that "there is a '*possibility* that a state court would find that the complaint states a cause of action against any of the [non-diverse] defendants.'" *Id*. (quoting *Hunter*, 582 F.3d at 1046) (emphasis added in *Grancare*). This means that the joinder of a non-diverse party will not necessarily be deemed fraudulent even if the claim could be dismissed. *Id*. In effect, the "possibility" standard is akin to the "wholly insubstantial and frivolous standard for dismissing claims under Rule 12(b)(1)." *Id*. at 549-50 (quotation omitted). If there is any possibility above the trivial or frivolous that the plaintiff can state a claim against the non-diverse defendant, "the federal court must find that the joinder was proper and remand the case to state court." *Hunter*, 582 F.3d at 1046 (quotation omitted).

4

There is a "'general presumption against [finding] fraudulent joinder,'" which adds to the usual presumption against removal in all cases under Section 1332 and imposes a particularly heavy burden on the defendant to prove. *Grancare*, 889 F.3d at 548 (quoting *Hunter*, 582 F.3d at 1046). The defendant has some leeway to present facts outside the complaint, but the complaint is usually the best guide in determining whether joinder was fraudulent, and in any event the defendant must prove fraudulent joinder by clear and convincing evidence. *Id.* at 549; *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

Bayer has not established fraudulent joinder under either of the dispositive tests. It appears to make a single, rather tentative stab at plaintiff Doe under the first test by suggesting that she actually resides in New York and not California. Dkt. No. 18 at 3-4. In response, Doe represented that she does, in fact, reside in California, and indicated that Bayer appeared to be relying on outdated Internet information. Dkt. No. 19 at 4. Bayer has not proffered clear and convincing evidence of actual jurisdictional fraud on Doe's part, or that she is not a citizen of California. To the extent there are any doubts about removal under this prong, they are of course construed in favor of a remand.

With respect to the second test, Bayer does not meaningfully dispute that plaintiffs' claims against McKesson have at least a non-frivolous possibility of stating a cause of action in California state court. Plaintiffs allege that McKesson has its main office in San Francisco, California, and distributed and sold Magnevist generally throughout California, and specifically to plaintiffs. *See, e.g.*, Dkt. No. 1-1 ¶¶ 11-18, 36. Plaintiffs further allege that McKesson's failure to warn about the risks associated with Magnevist was the legal cause of their injuries. *See, e.g.*, *id.* ¶¶ 39-46, 73. California law does not, by any means, rule out plaintiffs' strict liability and negligence claims against McKesson as a participant in the chain of distribution of the allegedly defective Magnevist product. *See, e.g., Bostick v. Flex Equip. Co.*, 147 Cal. App. 4th 80, 88 (2007). The vast majority of other district courts that have considered this question have reached the same conclusion. *See Dodich v. Pfizer Inc.*, 18-cv-02764-WHA, 2018 WL 3584484, at *1 (July 26, 2018 N.D. Cal. 2018) (collecting cases); *Hatherley v. Pfizer, Inc.*, 2:13-00719 WBS, 2013 WL 3354458, at *2 (July 3, 2013 E.D. Cal.) (same). The sound reasoning of these many

1    courts in finding that a products liability claim in similar circumstances is, at a minimum, a

2    possibility in California state court makes short work of Bayer's suggestion to the contrary.

3          Bayer's mention of potential preemption, Dkt. No. 18 at 7, does not discount this

4    conclusion in any way. Bayer does little more than flag preemption as a concept, and does not

5    provide a meaningful discussion about how it might be germane to the removal question under

6    governing law. It has an even bigger problem in that preemption goes to the merits of the

7    plaintiff's case and entails a degree of analysis that does not render a state law claim obviously

8    barred or frivolous for fraudulent joinder purposes. *See Hunter*, 582 F.3d at 1045. Bayer does not

9    identify a California case saying preemption would be obvious here, and the lone Supreme Court

10   case it cites involved generic drug manufacturers and has not been extended in binding precedent

11   to distributors like McKesson. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011). At best, Bayer

12   merely says that preemption might be found, which necessarily admits that it might not be found,

13   and so does not foreclose the possibility that plaintiffs have a viable claim in state court.

14         Bayer devotes considerably more effort to attacking plaintiffs' supposed motivation for

15   joining McKesson as a defendant. *See, e.g.*, Dkt. No. 18 at 8-10. Bayer points to other cases

16   where it says McKesson was named as a defendant and subsequently dismissed or not seriously

17   pursued for settlement or judgment. In Bayer's view, this indicates that plaintiffs sued it here

18   solely with the intent of defeating removal, and so its presence should be ignored.

19         The argument is not well taken. A plaintiff's motives for joining a defendant play no role

20   in the fraudulent joinder tests established by *Grancare* and *Hunter*, and Bayer has not shown

21   otherwise. Its focus on motive is all the more doubtful because the Supreme Court has long held

22   that a plaintiff has "an absolute right" to sue any and all joint tortfeasors it chooses, regardless of

23   motive, and a charge of fraudulent joinder in that context "would be bad on its face." *Illinois*

24   *Cent. R.R. Co. of Ill. v. Sheegog*, 215 U.S. 308, 316 (1909); *see also Chicago, Rock Island &*

25   *Pacific Railway Co. v. Schwyhart*, 227 U.S. 184, 193-94 (1913) (motive of plaintiff irrelevant for

26   removal purposes); *Albi v. Street & Smith Publications, Inc.*, 140 F.2d 310, 312 (9th Cir. 1944)

27   (same). Even if an inquiry into a plaintiff's subjective intent were appropriate, which is not the

28   case, Bayer has not proffered clear and convincing evidence of bad intent, whatever that might be.

Plaintiffs have adduced facts indicating McKesson was actively litigated against in some of the other cases, and that some of the dismissals mentioned by Bayer happened because discovery showed that McKesson had not distributed the Magnevist used by the plaintiffs in those cases. *See* Dkt. No. 15-2 ¶¶ 3, 5; Dkt. No. 19 at 5.

That resolves Bayer's arguments for removal on the basis of fraudulent joinder and diversity. Bayer's next argument is under 28 U.S.C. Section 1442(a), which permits the removal of a state-court action against an officer, or a person acting under an officer, of the United States for an act under color of office. Bayer contends that plaintiffs' failure-to-warn claims arise out of conduct Bayer took under the direction of the FDA, and so removal under Section 1442(a) was proper. Dkt. No. 18 at 12-14.

This argument, too, is not well taken. As the plain language of Section 1442(a) indicates, it is intended to protect federal officers from interference with their official duties through state-court litigation. *Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981). The statute "responds to three general concerns: (1) 'State-court proceedings may reflect 'local prejudice' against unpopular federal laws or federal officials'; (2) 'States hostile to the Federal Government may impede' federal law; and (3) 'States may deprive federal officials of a federal forum in which to assert federal immunity defenses.'" *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018) (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007)). Section 1442 is liberally construed to address these issues, but is not limitless in scope. *Id*. (citing *Watson*, 551 U.S. at 147).

To remove under the section, Bayer must show "that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (citation omitted).

Bayer has not shown that any of this might justify removal here. Bayer, a global public pharmaceuticals company, is decidedly not an agency or officer of the United States. The linchpin of its removal theory under Section 1442(a) is that it was acting pursuant to the directions of a

7

federal officer in undertaking the actions that are the subject of this lawsuit. Dkt. No. 18 at 12-14. For a private entity to be "acting under" a federal officer, the private entity must be involved in "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152) (emphasis omitted). "The paradigm is a private person acting under the direction of a federal law enforcement officer." *Fidelitad*, 904 F.3d at 1099; *see also Watson*, 551 U.S. at 151 ("That relationship typically involves 'subjection, guidance, or control.'") (quotation omitted).

No federal officer directed Bayer not to warn patients or healthcare professionals about the potential risks of Magnevist and link to GDD. Bayer says its disclosures were made in accordance with FDA laws and regulations, Dkt. No. 18 at 13-14, but "'simply complying with the law' does not bring a private actor within the scope of the federal officer removal statute." *Fidelitad*, 904 F.3d at 1100 (quoting *Watson*, 551 U.S. at 152 (emphasis omitted)). Bayer's heavy reliance on *Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014), does not lead to a different result. In *Leite*, a military contractor was permitted to remove a state-court case alleging a failure to warn about asbestos hazards in naval equipment because senior officers in the United States Navy filed declarations stating that the Navy exercised complete control over the form and content of all warnings made by contractors, and that contractors could not include warnings unless specifically required and approved by the Navy. *Id*. at 1123. Bayer has not proffered any similar evidence here for its alleged failure to warn about Magnevist. The fact that Bayer and other pharmaceutical companies might be highly regulated also does not, it itself, constitute a basis for removal under Section 1442(a). *Watson*, 551 U.S. at 153; *Fidelitad*, 904 F.3d at 1100. To hold otherwise on any of these points, or to read Section 1442(a) as broadly as Bayer urges, would allow removal to federal court in circumstances far beyond anything Congress intended. *See Lu Junhong v. Boeing Co.*, 792 F.3d 805, 808-09 (7th Cir. 2015).

So too for the fact that Bayer participated in certain FDA advisory committees. Its participation was entirely free and voluntary, *see, e.g.*, Dkt. No. 1 ¶¶ 56-63, and hardly to product of direction or compulsion by the FDA.

This is enough to end the Section 1442(a) analysis, but for the sake of completion, Bayer also has not shown a colorable federal defense of any import to removal. It claims to have

8

1  "numerous" such defenses but does nothing more than name-drop them with no discussion of
2  whether and how they might apply here.  *See* Dkt. No. 18 at 14-15.

### CONCLUSION

The cases were removed improvidently and without jurisdiction.  They are remanded to the California Superior Court for the City and County of San Francisco pursuant to 28 U.S.C. Section 1447(c).

**IT IS SO ORDERED.**

Dated:  March 18, 2019

_____
JAMES DONATO
United States District Judge